UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALVIN JOHNSON,**

        **Plaintiff,**

vs.                                              Case No.  8:04-cv-1406-T-26MSS

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____/

## ORDER

    Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for supplemental security income under the Act.[1]

    The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**I.    BACKGROUND**

    **A.    Procedural History.**

    Plaintiff applied for supplemental security income on July 9, 2002. (T. 11.) Plaintiff alleged an onset of disability of January 15, 2002, due to major depression and back pain.

---

[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the district court has referred the matter for final disposition.

(T. 12.)  His claim was denied initially and on reconsideration.  (T. 11.)  The Appeals Council denied review of the January 12, 2004, ALJ decision making the hearing decision the final decision of the Commissioner.  (T. 4.)  On June 17, 2004, Plaintiff filed this action for review.

### B. Medical History and Findings Summary.

Plaintiff's medical history is set forth in the ALJ's decision.  By way of summary, Plaintiff has a history of back pain, alcohol abuse, and drug abuse.  (T. 13.)

After considering the evidence, including medical records from Plaintiff's treating and examining physicians, the ALJ found that Plaintiff has the following severe impairments: ongoing cocaine abuse, depression, and degenerative disc disease with chronic back pain.  (T. 15.)  The ALJ further concluded that Plaintiff's degenerative disc disease does not meet the requirements of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (T. 15.)  The ALJ found, however, that Plaintiff's cocaine abuse and depression meet the criteria described in sections 12.04 and 12.09 of the Regulations.  The ALJ found that Plaintiff's alcohol and drug addiction are contributing factors to the Commissioner's determination that Plaintiff is disabled, and, absent alcohol and drug abuse, Plaintiff would no longer meet any of the listings.  (T. 15-17.)

The ALJ assessed Plaintiff's residual functional capacity (RFC) in the absence of abuse as follows: capable of performing light work with occasional limitation for bending, stooping, crouching, and kneeling, with an occasional limitation for concentrating on tasks assigned, but capable of performing routine repetitive tasks in an environment that allows for a sit/stand option.  (T. 20.)  The ALJ found that Plaintiff is unable to return to any of his past relevant work.  (T. 20.) Based on the testimony of a Vocational Expert ("VE"), the ALJ

found that a significant number of jobs exist in the national economy that Plaintiff can perform, such as survey worker, parking lot attendant, and storage facility rental clerk. (T. 21.) As such, the ALJ concluded that Plaintiff is not disabled under the Act. (T. 21.)

## II.    STANDARD OF REVIEW

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law de novo. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. See McDaniel v. Bowen, 800 F.2d 1026, 1029-1030 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

Against this standard, Plaintiff asserts three points of error: (1) that the ALJ failed to give proper weight to the opinion of Plaintiff's treating physicians; (2) that the ALJ erred

by not contacting those medical sources for clarification as needed; and, (3) that the ALJ failed fully and adequately to weigh the substantial evidence in this matter.

For the reasons that follow, the Undersigned **ORDERS** that the decision of the Commissioner be **AFFIRMED**.

### III.    DISCUSSION

#### A.    Whether the ALJ Gave Proper Consideration to the Opinion of Plaintiff's Treating Physicians.

Plaintiff alleges that the ALJ failed to give proper weight to the opinions of Plaintiff's treating physicians. Plaintiff relies on these physicians' opinions as support for Plaintiff's position that he has physical limitations that prevent substantial, gainful activity and that Plaintiff's depression is not connected to his substance abuse. (Dkt. 21 at 7-11.) Plaintiff asserts that the evidence does not support a finding that Plaintiff's depression and substance abuse are contributing factors to his disabling impairments and that there are many times when Plaintiff was depressed apart from his substance abuse. (Dkt. 21 at 7.)

The controlling body of law on the priority of medical evidence provides that the treating physician's opinion may not be rejected absent good cause to the contrary. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Furthermore, that good cause finding must be set forth expressly on the face of the ALJ's opinion. "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986). The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of

Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb, 847 F.2d at 703 ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.")  Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician.  Johns v. Bowen, 821 F.2d 551 (11th Cir.1987).  This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists, however, to discount a treating physician's opinion when: 1) the opinion of the treating physician is not supported by the evidence; 2) the evidence supports a contrary finding; or 3) the opinion of the treating physician is conclusory or inconsistent with the physician's own medical records. Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1327, 1329 (M.D. Fla. 2002), aff'd 69 Fed. Appx. 991, 2003 WL 21283493 (11th Cir. May 22, 2003).

With respect to an individual with a history of drug and/or alcohol abuse, he is not considered disabled, even if he meets the definition of disabled under the Social Security Act, if the ALJ finds that alcoholism or drug addition are contributing factors material to the determination that the individual is disabled.  42 U.S.C. § 423(d)(2)(C).  To determine whether alcohol or drug addiction is a contributing factor material to the determination of disability, the ALJ must assess whether the individual would still be disabled if he stopped using alcohol or drugs.  29 C.F.R § 404.1535(b)(2).  Plaintiff bears the burden of proving

that she would still be disabled in the absence of an alcohol or drug addiction. Doughty v. Apfel, 245 F.3d 1274, 1276 (11th Cir. 2001).

In challenging the ALJ's consideration of the medical evidence, Plaintiff points to the opinions of five sources in the record whom he contends are treating physicians: Dr. Camilo Martin, Dr. Jon D. Hodgin, Dr. Lidia Vesely, Dr. Ganesh, and Dr. Thomas Hibbard. Each will be addressed in turn.

**1. Whether the ALJ Properly Rejected Dr. Martin's Opinion.**

Plaintiff contends that the ALJ failed to give proper consideration to the opinion of Dr. Martin. Dr. Martin found that Plaintiff had a lengthy history of alcohol and drug abuse, diagnosed Plaintiff with substance-induced mood disorder, and admitted him for in-patient detoxification for cocaine from June 20, 2002, to June 24, 2002. (T. 212.) At that time, Dr. Martin found Plaintiff had depressive episodes associated with his substance abuse, that his depressive mood was a withdrawal manifestation and that he consumed cocaine daily. (T. 132.) Plaintiff's physical examination was unremarkable and laboratory tests revealed a positive toxicology screen for cocaine. (T. 133.) Dr. Martin gave Plaintiff a global assessment of functioning ("GAF") score of $60^2$ upon his discharge from the hospital and noted that "Patient is competent to handle funds. Does not need a period of convalescence." (T. 132.)

---

[2] A GAF of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000) (DSM-IV).

On July 15, 2002, however, after Plaintiff's discharge from the hospital for cocaine detoxification, Dr. Martin inexplicably made an addendum to Plaintiff's records, noting that "Pt. indicates that he had not used cocaine regularly prior to his recent hospitalization. He also provided evidence that shows that patient has been depressed in the past unrelated to his cocaine use." (T. 135.) He changed Plaintiff's diagnosis from substance-induced mood disorder to depressive disorder, NOS. (T. 135.) Dr. Martin did not indicate what the referenced "evidence" was. (T. 135.) In January 2003, Dr. Martin reported that Plaintiff had not satisfactorily participated in the recovery program. (T. 293.) He also noted that Plaintiff reported persistence of depressive symptomology, although not as significant as before. (T. 293.)

The ALJ stated that Dr. Martin's modified diagnosis was the only evidence that showed Plaintiff was depressed unrelated to his substance abuse, and he rejected the diagnosis as contrary to the great weight of the evidence. (T. 17.) The ALJ added that Dr. Martin appeared to be a general practitioner repeating the Plaintiff's statements. (T. 17.) The ALJ ultimately found that Plaintiff's alcohol and drug abuse is a material factor to his determination of disability. (T. 16-17.)

Plaintiff alleges that the ALJ misstated Dr. Martin's qualifications as a general practitioner and that his findings were not contrary to the great weight of the evidence. (Dkt. 21 at 7-8.) The Commissioner asserts that Dr. Martin based Plaintiff's modified diagnosis on his erroneous and ill informed reports. (Dkt. 25 at 7-8.)

Regarding Dr. Martin's qualifications, the Court finds that the ALJ's assessment of Dr. Martin as a general practitioner was incorrect because Dr. Martin is certified by the American Board of Psychiatry and Neurology, as conceded by the Commissioner. (Dkt.

7

21 at Ex. A., Dkt. 25 at p.7)  This alone is not reversible error because the ALJ provided other reasons for discounting Dr. Martin's opinion.  As noted, the opinion of a treating physician is properly discounted where it is not supported by the evidence or the evidence supports a contrary finding.

Regarding Dr. Martin's modified diagnosis, the Court determines that the ALJ's finding that it was contrary to the great weight of the evidence was clearly articulated and supported by substantial evidence.  First, Dr. Martin did not indicate what evidence Plaintiff provided to show that he experienced depression in the past that was unrelated to substance abuse.  (T. 135.)  Other than Plaintiff's unreliable statements and unknown evidence provided by him, no objective medical evidence exists in Dr. Martin's records to support his abrupt modification of Plaintiff's diagnosis.

Dr. Martin's modified diagnosis was based, in part, on Plaintiff's representation that he did not use cocaine regularly prior to his recent hospitalization and had been depressed in the past unrelated to his cocaine use.  (T. 135.)  Contrary to Plaintiff's report to Dr. Martin that he had not used cocaine regularly prior to his recent hospitalization, Plaintiff had abused alcohol and cocaine regularly prior to his hospitalization.  On June 20, 2002, Plaintiff was seen by Lorrie Miech, M.D., who noted that Plaintiff had been drinking up to a case a day of beer off and on during the past three weeks.  "He last drank on Monday and also used cocaine on that day.  He estimates spending around $300 on cocaine during the past three weeks. "  (T. 218.)  This report was from the same day that Plaintiff saw Dr. Martin.  The ALJ specifically cited to these records.  (T. 16.)  Thereafter, Dr. Miech admitted Plaintiff for stabilization.  (T. 231-232.)  Dr. Martin's modified diagnosis related to that very same week of hospitalization.  Further, only four days following his discharge,

8

Plaintiff admitted to Dr. Vesley that he had "used cocaine three days prior to admission." (T. 189.)

Plaintiff also had a long history of abuse. The Navy discharged him in 1985 for legal problems involving drugs. (T. 218.) According to Dr. Mukerji, Plaintiff had a history of drug and alcohol problems but, on November 29, 1998, Plaintiff claimed that he had not been using alcohol for the last 2-3 months. (T. 109). According to Dr. Harvey, D.O., on November 30, 1998, Plaintiff admitted to significant substance abuse. (T. 108). A hospital admitted him for abuse in 1998, and he had been in detoxification approximately nine or ten times. (T. 108.) As such, the ALJ's rejection of Dr. Martin's modified diagnosis as ill informed based on Plaintiff's representations is supported by substantial evidence.

Finally, the ALJ noted that Plaintiff's GAF scores improved significantly upon being hospitalized when he was sober. (T. 16.) When a hospital admitted Plaintiff for substance abuse in 1998, his GAF upon admission was 30,[3] and upon his discharge it was 60. (T. 108-110.) When a hospital admitted Plaintiff for detoxification in 2002, his GAF was 25 upon admission. (T. 231-232.) His urine contained cocaine. (T. 304.) His GAF was 60 upon discharge. (T. 295.) Accordingly, the ALJ's rejection of Dr. Martin's modified finding that Plaintiff had depression in the absence of substance abuse as contrary to the great weight of the evidence is supported by substantial evidence.

---

[3] A GAF of 21-30 indicates that behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g. stays in bed all day; no job, home, or friends). Id.

**2. Whether the ALJ Properly Rejected Dr. Hodgin's Opinion.**

Plaintiff also points to the opinion of Dr. Hodgin in support of his claim that the ALJ did not give the opinions of his treating physicians substantial weight. In June 2003, Dr. Hodgin found that Plaintiff was depressed but that his speech was normal, his attitude and behavior were appropriate, he had no hallucinations or delusions, he was alert and oriented, his memory was intact, and his concentration, abstraction ability, insight, and judgment were good. (T. 277.) Nevertheless, Dr. Hodgin diagnosed Plaintiff with major depressive disorder, and noted that he had a GAF of 45.[4] (T. 277.)

In July, 2003, Dr. Hodgin examined Plaintiff and noted that Plaintiff felt that the medication regimen was helping to control his symptoms to some extent. "[H]e states that he has no complaints and no side effects at this time." (T. 284.) He noted that Plaintiff's mood was "ok" and his affect "subdued." Again, Plaintiff's speech was normal, his attitude and behavior were appropriate, he had no hallucinations or delusions, he was alert and oriented, his memory was intact, and his concentration, abstraction ability, insight, and judgment were good. (T. 284.) Dr. Hodgin again assigned Plaintiff a GAF of 45. (T. 284.)

In September 2003, Dr. Hodgin completed a medical assessment questionnaire, and it is unclear whether he examined Plaintiff on this date. (T. 317-324.) At this time, Dr. Hodgin found Plaintiff's symptoms to be poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, anhedonia, feelings of guilt/worthlessness, difficulty thinking/concentrating, social withdrawal or isolation, and

---

[4] A GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

decreased energy. (T. 318.) Dr. Hodgin reported that Plaintiff's prognosis was good. (T. 319.) Regarding Plaintiff's mental abilities to perform work activities, Dr. Hodgin gave Plaintiff "fair" ratings and stated that Plaintiff's ongoing depressive symptoms caused the ratings. (T. 321-323.) Dr. Hodgin opined that Plaintiff's depressive symptoms created moderate limitations in his daily living activities, social functioning, concentration, and one to two episodes of deterioration/decompensation. (T. 323.)

The ALJ did not assign substantial weight to Dr. Hodgin's opinion because Dr. Hodgin did not factor Plaintiff's drug abuse into his opinion and the ALJ was not sure that Dr. Hodgin was aware of Plaintiff's substance abuse. (T. 20.) The ALJ found that without his alcohol and drug use, Plaintiff would still have severe impairments but with mild limitations in activities of daily living and social functioning, a moderate limitation in concentration, and no episodes of decompensation. (T. 17.) Accordingly, the ALJ assigned Plaintiff an RFC in the absence of alcohol and drug abuse that includes "an occasional limitation for concentrating on tasks assigned, but capable of performing routine repetitive tasks. . . ." (T. 20.)

Plaintiff asserts that Dr. Hodgin was likely aware of Plaintiff's substance abuse because he worked in the VA system where Plaintiff had been treated for substance abuse and because the medical records mentioned Plaintiff's substance abuse both prior to and at the same time as Dr. Hodgin's interaction with Plaintiff. (Dkt. 21 at 9.) Plaintiff argues that if his substance abuse were considered an important factor, Dr. Hodgin would not have suggested that Plaintiff have access to funds that could otherwise be spent on drugs. (Dkt. 21 at 10.) The Commissioner asserts that Dr. Hodgin did not describe how drug abuse factored into his opinion. (Dkt. 25 at 9.) The Commissioner also argues that Dr.

Hodgin's opinions regarding Plaintiff's limitations are not supported by the findings from his first examination of Plaintiff in June 2003, where Dr. Hodgin found that Plaintiff was depressed, but that he was alert, his memory was intact, and his abstraction ability, insight, judgment, and concentration were good.  (Dkt. 25 at 9.)

The Court finds that the ALJ properly rejected Dr. Hodgin's opinion because Dr. Hodgin did not address the effect of Plaintiff's drug abuse on his abilities.  Further, rather than support his claim of disabling mental impairment, the fact that Dr. Hodgin noted Plaintiff was capable of managing his funds belies the extent of his finding of limitations and does not speak at all to Plaintiff's substance abuse.  Additionally, the limitations Dr. Hodgin expressed in September 2003 were not consistent with his earlier findings in June 2003 when he found that Plaintiff's speech was normal, his attitude and behavior were appropriate, he had no hallucinations or delusions, he was alert and oriented, his memory was intact, and his concentration, abstraction ability, insight, and judgment were good.  (T. 277, 284.)  The limitations were also inconsistent with his earlier findings in July 2003 that Plaintiff "feels that this medication regimen is helping to control his symptoms to some extent.  He states that he has no complaints and no side effects at this time."  (T. 284.)

Further, Dr. Zelenka, PhD, a state examiner, examined Plaintiff and found he had the ability to do work, but that his addiction disrupts his vocational and social functioning.  (T. 174.)  Dr. Vergara, M.D., another state examiner, found that Plaintiff improved when abstinent and that he retains the ability to understand and remember short, simple instructions, to do ordinary routines without special supervision, and to work in coordination with others.  (T. 265.)  While the opinions of state examiners do not normally trump those

12

of a treating physician, here the ALJ's decision, based on the full record, to assign little weight to the opinion of Dr. Hodgin is supported by substantial evidence.

### 3. Whether the ALJ Properly Rejected Dr. Vesely's Opinion.

Plaintiff additionally points to the opinion of Dr. Lidia Vesely in support of Plaintiff's contention that the ALJ did not grant substantial weight to the opinions of his treating physicians. In July, 2001, Dr. Vesely found Plaintiff had history of a herniated disc and chronic low back pain; however, Dr. Vesely advised Plaintiff to increase his physical activity level. (T. 240.) At that time, Plaintiff denied any depression for the two previous years. (T. 240.) In June, 2002, regarding Plaintiff's back, Dr. Vesely found "tenderness around 15 with paraspinal muscle tenderness pain" reproduced on the right lower side by raising both legs. (T. 189.) She also found that Plaintiff's strength was five out of five, but that raising his legs against resistance caused pain in his back. (T. 189.) Dr. Vesely again advised Plaintiff to increase his physical activity level. (T. 190.) At that time, Plaintiff reported that he had used cocaine three days prior to his admission, but it was his first time doing so in three years. (T. 189.) Plaintiff also reported that he was depressed, that he had a long history of depression and suicide attempts, and that drugs did not cause his depression. (T. 189.)

In January, 2003, Dr. Vesely noted that Plaintiff's MRI showed moderate degenerative disc disease, and that pain limited him and his strength had decreased. (T. 292.) Dr. Vesely assessed Plaintiff with low back pain exacerbation and recommended that Plaintiff be referred to a pain clinic. (T. 292.) Also on this date, Dr. Vesely made a statement that Plaintiff has been unable to work since June, 2001. (T. 283.) In May, 2005, Dr. Vesley found that Plaintiff had pain in his back, with an intensity rating of eight out of

ten. (T. 279.) Dr. Vesely assessed Plaintiff with low back pain and noted that Plaintiff had difficulty sitting for too long, laying down, and sleeping. (T. 280.) Dr. Vesely again advised Plaintiff to increase his physical activity level. (T. 280.) Regarding Plaintiff's depression, no objective medical evidence exists in Dr. Vesely's treatment notes other than Plaintiff's reports either denying or admitting depression. (T. 189, 240, 279.)

The ALJ rejected Dr. Vesely's comment that Plaintiff has been unable to work since June 2001 because 1) an opinion about whether Plaintiff is disabled is reserved to the Commissioner; 2) Dr. Vesely's treatment notes did not support a total inability to do work; and, 3) she did not explain either her comment or the evidence upon which she based her opinion. (T. 19.)

The Court finds that Dr. Vesely's statement that Plaintiff was unable to work was a determination of Plaintiff's disability. Determinations of disability are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (2000). Additionally, the Court finds that the ALJ's conclusion that Dr. Vesely's statement was unsupported by her medical findings, assessments and plans for Plaintiff is supported by substantial record evidence. The statement was made in January 2003, and Dr. Vesely noted that Plaintiff had been unable to work since July 2001. (T. 283.) Dr. Vesely assessed Plaintiff's back pain in July 2001 and in June 2002, and advised Plaintiff to increase his physical activity level on both of those occasions. (T. 189-190, 240.) This advice is not indicative of a complete inability to do work. Dr. Vesely did prescribe a cane in January 2003 because Plaintiff lifted his grandson and exacerbated his back pain. (T. 292.) In May, 2003, however, Dr. Vesely assessed Plaintiff's back pain and again advised that he increase his physical activity. (T.

280.) Due to the lack of support for Dr. Vesely's statement, the Court finds that the ALJ properly rejected Dr. Vesely's statement that Plaintiff was unable to work.

**4. Whether the ALJ Properly Rejected the Opinions of Dr. Ganesh and Dr. Hibbard.**

Plaintiff finally points to the opinions of Dr. Ganesh and Dr. Hibbard contending that the ALJ did not afford Plaintiff's treating physicians proper weight. Dr. Ganesh examined Plaintiff once. (T. 325-326.) Additionally, Dr. Hibbard examined Plaintiff only once. (T. 146-148.)

Examining an individual on a single occasion does not qualify a physician as a treating physician. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004). Because both Dr. Ganesh and Dr. Hibbard only examined Plaintiff once, the Court determines that these two physicians do not qualify as treating physicians and are not entitled to the substantial weight afforded to treating physicians' opinions.

**B. Whether the ALJ Erred by Failing to Contact Plaintiff's Treating Physicians for Clarification.**

Plaintiff contends finally that the ALJ should have recontacted all of the above-mentioned physicians for clarification of any ambiguity that existed in their medical records. The Commissioner asserts that the record was sufficient to permit the ALJ to reach an informed decision regarding whether Plaintiff's alleged back impairments and depression rendered him disabled within the meaning of the Social Security Act. (Dkt. 25 at 11.)

The claimant has the burden to provide medical evidence showing that he is disabled. 20 C.F.R. § 416.912(c). Nonetheless, the ALJ has the burden of developing a full and fair record. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing Cowart

v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).  The regulations provide that the ALJ may order a consultative examination.  20 C.F.R. §§ 416.912(f) and 416.917 (emphasis added).  A consultative examination is not always required in order for the ALJ to satisfy her duty to fully and fairly develop the record; however, it may be required in order for the ALJ to render an informed decision if the record establishes that such an examination is necessary.  Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)(citation omitted); Pearson v. Bowen, 866 F.2d 809 (5th Cir. 1989).

Concerning the duty to recontact a physician, the ALJ must recontact physicians regarding their medical records if the evidence is not sufficient for conclusion.  20 C.F.R. § 404.1512(e) (2000).  The inadequacy of the evidence, rather than the rejection of the treating physician's opinion, prompts the ALJ's duty to recontact.  White v. Massanari, 287 F.3d 903, 908 (10th Cir. 2001).

In this case, the ALJ concluded that recontacting the treating physicians was not necessary.  The Court finds that substantial evidence supports the ALJ's decision.  In determining Plaintiff's residual functional capacity, the ALJ noted that he considered all of the evidence, including Plaintiff's description of his symptoms and limitations and the opinions of medical sources.  (T. 17-20.)  The ALJ gave great weight to the opinions of the examining state agency physicians in determining the Plaintiff's RFC.  (T. 19-20.)  The ALJ explained that no substantive evidence existed to sustain any greater limitations than the limitations reported by the state examiners.  (T. 19.)   Plaintiff failed to raise the requisite suspicion that recontacting his prior treating doctors, whose opinions were well documented, was necessary for the ALJ to make an informed decision as to Plaintiff's RFC.  Thus, the ALJ did not err in failing to recontact the physicians for clarification.

**IV. CONCLUSION**

Accordingly, it is ordered that the decision of the ALJ was supported by substantial evidence and the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure in favor of Defendant and close this case.

**DONE AND ORDERED** in Tampa, Florida on this 29th day of September 2005.

MARY S. SCRIVEN
United States Magistrate Judge

Copies furnished to:
Counsel of Record